# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 95 C 5370 | **DATE** | 6/10/2003 |
| **CASE TITLE** | Sonii, et al. vs. General Electric Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiffs' motion for an award of attorney's fees [138-1] is denied. Plaintiffs are requested to file a brief on the issue of attorney's fees incurred regarding their motion for sanctions [68-1] within 30 days of this order. Defendant may file a response within 20 days thereafter, after which plaintiffs have 14 days to file their reply.

(11) ■ [For further detail see order attached to the original minute order.]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

JUN 1 1 2003

| | |
|---|---|
| ABRAHAM V. SONII and RUFUS I. JONES, ) | |
| ) | |
| Plaintiffs, ) | Case No. 95 C 5370 |
| v. ) | |
| ) | |
| GENERAL ELECTRIC, ) | Judge Joan B. Gottschall |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Abraham Sonii and Rufus Jones, filed suit against their former employer, General Electric Co. ("GE"), for alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. The parties entered into a settlement agreement, and plaintiffs subsequently filed a motion for attorney's fees, costs, and interest. For the reasons set forth below, that motion is denied. However, as explained below, plaintiffs are entitled to attorney's fees resulting from GE's discovery violations.

### Background

On September 20, 1995, Sonii filed a *pro se* complaint against GE alleging that GE discriminated against Sonii in his employment with GE on the basis of his race. In 1996, Judge Milton Shadur appointed David E. Trainor of the law firm of Tressler, Soderstrom, Maloney & Priess ("TSMP") as counsel for Sonii. On October 8, 1996, Sonii filed a two-count Second Amended Complaint against GE alleging violations of Title VII. On April 9, 1997, this court granted leave for Thomas R. Meites, Michael M. Mulder, and Paul R. Mollica of the law firm of Meites, Mulder, Burger and Mollica ("MMBM") to appear as additional counsel for Sonii.

On June 26, 1997, this court granted Jones leave to appear as an additional party plaintiff,



and he retained the MMBM and TSMP firms as his counsel. Plaintiffs Sonii and Jones filed a Third Amended Complaint on September 18, 1997, each alleging disparate treatment and disparate impact in violation of Title VII. The parties engaged in several disputes throughout the discovery process, culminating in plaintiffs' Motion for Discovery Sanctions Based on Spoliation of Evidence, in which plaintiffs alleged that GE intentionally destroyed relevant evidence including invoice books and a computerized data base. On March 12, 1999, this court held: "While the court finds no basis for concluding that GE has intentionally withheld and destroyed relevant evidence, GE's conduct has been dilatory and reckless and demonstrates disregard for its responsibility to preserve and produce highly relevant evidence." (Interim Order Pls.' Mot. Disc. Sanctions ¶ 9.) The court withheld ruling on sanctions until it could determine the prejudice that GE's conduct caused plaintiffs. After a hearing later that month, the court granted plaintiffs' motion for sanctions, but held that sanctions should be determined at two stages: (1) sanctions in terms of adverse inferences would be resolved via motions *in limine*; and (2) sanctions in the form of attorney's fees would be addressed after trial.

On February 17, 2000, this court granted GE's motion for summary judgment as to plaintiff Jones's disparate treatment claim, but denied the motion in all other respects. A bench trial was then scheduled for November 6, 2000. On September 22, 2000, the parties filed, and this court granted, a joint motion to cancel the pretrial conference. On September 28, 2000, this court issued the parties' proposed order striking the pretrial order deadline, pretrial conference, and trial. The minute order further stated: "The parties shall finalize a formal written settlement agreement by 10/13/00, formalizing the agreement in principle reached between the parties on 9/22/00. Fee petition by plaintiff to be filed by 10/30/00 . . . . The parties will be notified by the

Court if a hearing on the fee petition is needed." (Minute Order of 9/28/00.)

On October 15, 2000, the parties entered into a Complete and Permanent Release and Agreement ("settlement agreement"), which resolved plaintiffs' claims of race discrimination against GE, but provided that this court should resolve the issue of attorney's fees. The terms of the settlement agreement are confidential. Plaintiffs filed their motion for fees, costs, and interest on January 4, 2001.

## Analysis

Plaintiffs seek attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k), which allows reasonable attorney's fees for prevailing parties in Title VII cases. Plaintiffs' original fee petition alleged that the TSMP firm incurred over $717,934.50 in fees and $77,939.39 in nontaxable costs, and that the MMBM firm incurred over $107,297.50 in fees and $84,922.02 in nontaxable costs. Plaintiffs also seek additional fees relating to the litigation of their fee petition.

GE has submitted various objections to plaintiffs' fee request. Primary among them is that neither Sonii nor Jones is a "prevailing party" as defined by federal law, and therefore that plaintiffs' fee petition should be denied in its entirety. Plaintiffs respond that GE has violated Northern District of Illinois Local Rule 54.3 ("Local Rule 54.3"), and therefore has waived any and all objections to their fee request. The court concludes that GE has not waived its objections, and also concludes that because of recent Supreme Court case law, the court is unable to hold that plaintiffs are prevailing parties. Finally, the court must address its 1999 order granting plaintiffs' motion for sanctions. The court holds that plaintiffs are entitled to attorney's fees incurred based on GE's discovery violations. However, the parties have not addressed what those particular fees should be. More briefing is required.

3

## I. Local Rule 54.3

Plaintiffs argue that GE has waived its objections to their fee petition because it failed to comply with Local Rule 54.3. Specifically, plaintiffs contend that after the parties entered into the settlement agreement and pursuant to the local rule, they provided GE with a detailed summary of the attorney's fees and related costs that they incurred. In response, plaintiffs argue, GE provided a series of general objections, such as excessive time spent, duplicative work, work on unsuccessful arguments and claims, needless amount of time spent planning strategy, unnecessary research, excessive rates charged, and excessive costs of expert witnesses. Plaintiffs argue that GE failed to make a good faith attempt to narrow the issues in dispute. Specifically, plaintiffs complain that GE never disclosed any evidence on which it relied in making its general objections, failed to inform plaintiffs' counsel of its eventual "prevailing party" objection, and failed to identify those motions that it argues were unsuccessful.

Local Rule 54.3(d) requires that "the parties involved shall confer and attempt in good faith to agree on the amount of fees or related nontaxable expenses that should be awarded prior to filing a fee motion." Furthermore, Local Rule 54.3(d)(5)(D) provides that within 21 days of receipt of the documents supporting the fee motion, the respondent must furnish "any evidence the respondent will use to oppose the requested hours, rates, or related nontaxable expenses."

At first glance, GE's initial response with objections to plaintiffs' original billing statements appears to be less than satisfactory. On the other hand, GE correctly points out that the grounds for its objections are specifically provided in dated time entries corresponding with plaintiffs' billing statements; that it sent copies of the billing statements to plaintiffs, highlighted and marked with the specific time to which it objects; and that it explicitly reserved its

4

"prevailing party" objection in the parties' settlement agreement. Furthermore, GE's response brief and supplemental briefs in opposition to plaintiffs' fee petition set out comprehensive and detailed objections, which define the areas of dispute regarding attorney's fees.

"Local Rule 47 [the predecessor to Rule 54.3] aims to promote 'amicable resolution' by encouraging the parties to define their areas of actual disagreement regarding fee awards." *Tenner v. Zurek*, 168 F.3d 328, 331 (7th Cir. 1998). Moreover, "district courts have discretion in interpreting and applying their local rules." *Id.* (finding no abuse of discretion where district court excused compliance with then-current Local Rule 47 because of "the apparent animosity that exists between defendant and the law firm for plaintiffs"). Because the parties have sufficiently narrowed the areas of dispute through their briefs, the court will consider the merits of GE's objections. *See Angelilli v. Bd. of Educ. of the City of Chicago*, No. 00 C 1670, 2001 WL 708922, at *2 (N.D. Ill. June 15, 2001) ("Although defendant did not adequately contribute to the joint statement, the present briefs of the parties adequately serve the purpose of setting forth the parties' disagreements."); *Perez v. Z. Frank Oldsmobile, Inc.*, No. 97 C 8950, 2000 WL 222632, at *1 (N.D. Ill. Feb. 18, 2000) (holding that, in spite of the absence of a required joint statement of disputed issues, "[t]he response–reply approach by the parties has sufficiently defined the dispute"), *rev'd on other grounds*, 223 F.3d 617 (7th Cir. 2000), *cert. denied*, 531 U.S. 1153 (2001); *South/Southwest Ass'n of Realtors, Inc. v. Village of Crestwood*, 985 F. Supp. 833, 834-36 (N.D. Ill. 1997) (considering the merits of defendant's objections to plaintiff's fee petition despite failure to comply with Local Rule 47).

## II. Prevailing Party Status

Plaintiffs' fee motion was fully briefed by both parties in March 2001. At that time,

5

many circuits, including this one, adhered to the catalyst theory in determining whether settling plaintiffs were prevailing parties. *See Zinn v. Shalala*, 35 F.3d 273 (7th Cir. 1994). The catalyst theory provided that under some circumstances, a plaintiff could be deemed a prevailing party even if the defendant "voluntarily provide[s] the relief sought rather than litigating the suit to judgment." *Id.* at 274. In the Seventh Circuit, plaintiffs could be "prevailing parties" where the plaintiffs' lawsuit resulted in a private settlement between the parties if the lawsuit was causally linked to the relief obtained and the plaintiff's claim was not groundless, frivolous or unreasonable. *See, e.g., Edie F. v. River Falls Sch. Dist.*, 243 F.3d 329, 333 (7th Cir. 2001) (applying two-prong catalyst test); *Nanetti v. Univ. of Ill. at Chicago*, 867 F.2d 990, 992-93 (7th Cir. 1989) (same). GE, however, argues that the Supreme Court has effectively overruled this case law in *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*, 532 U.S. 598 (2001). The court agrees with GE.

In *Buckhannon,* the Supreme Court held that a "prevailing party" is "one who has been awarded some relief by the court," and in doing so flatly rejected the "catalyst theory" for determining whether a plaintiff is a prevailing party pursuant to federal fee-shifting provisions.[1] 532 U.S. at 603, 605. According to the Court, "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* at 605. As two examples of what could be the basis for an award of attorney's fees, the Court cited a judgment on the merits and a settlement agreement embodied in a consent decree. Both of these examples, the Court noted, constitute the

---

[1]*Buckhannon* applies to attorney's fees cases under Title VII. *Johnson v. ITT Aerospace/Communications Div. of ITT Indus., Inc.*, 272 F.3d 498, 500 (7th Cir. 2001).

6

required "court-ordered 'chang[e] [in] the legal relationship between [the plaintiff] and the defendant.'" *Id.* at 604 (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989)). Whether a party is a prevailing party therefore depends on whether the plaintiff has obtained a "judicially sanctioned change in the legal relationship of the parties."[2] *Buckhannon*, 532 U.S. at 605; *Fed'n Adver. Indus. Representatives, Inc. v. City of Chicago*, No. 02-1909, 2003 WL 1948858, at *5 (7th Cir. Apr. 25, 2003)

The Seventh Circuit has not yet addressed the circumstances under which a private settlement agreement constitutes such a judicially sanctioned change. But the *Buckhannon* Court observed in a footnote that "[p]rivate settlements do not entail the judicial approval and oversight involved in consent decrees," thus strongly suggesting that the Supreme Court would reject the idea that private settlements, absent "judicial sanction," can confer prevailing party status. *Buckhannon*, 532 U.S. at 604 n.7. Most courts that have addressed this issue interpret *Buckhannon* to mean just that. *Oil, Chem. & Atomic Workers Int'l Union v. Dep't of Energy*

---

[2]Some courts have narrowly interpreted *Buckhannon* to hold that a plaintiff is not a prevailing party unless he or she obtains either a judgment on the merits or a court-ordered consent decree. *See, e.g., Christina A. v. Bloomberg*, 315 F.3d 990, 993 (8th Cir. 2003); *Roberson v. Giuliani*, No. 99 CIV 10900, 2002 WL 253950, at *3 (S.D.N.Y. Feb. 21, 2002). The majority of courts, however, including the Seventh Circuit, construe *Buckhannon* more broadly, viewing judgments on the merits and consent decrees as non-exclusive examples of judicially sanctioned changes in the legal relationship between the parties. *Fed'n Adver. Indus. Representatives, Inc. v. City of Chicago*, No. 02-1909, 2003 WL 1948858, at *5 (7th Cir. Apr. 25, 2003); *see, e.g., John T. v. Del. County Intermediate Unit*, 318 F. 3d 545, 558 (3d Cir. 2003) (adopting broader view); *Smyth v. Rivero*, 282 F.3d 268, 281 (4th Cir. 2002) ("We doubt that the Supreme Court's guidance in *Buckhannon* was intended to be interpreted so restrictively as to require that the words 'consent decree' be used explicitly."); *Johnny's Icehouse, Inc. v. Amateur Hockey Ass'n of Illinois*, No. 00 C 7363, 2001 WL 893840, at *3 (N.D. Ill. Aug. 7, 2001) (holding that *Buckhannon* "pointed to enforceable judgments on the merits and court-ordered consent decrees as examples of material alterations of parties' legal relationships, but the Court did not hold that those are the only instances in which a party may be deemed to have prevailed").

7

("*OCAW*"), 288 F.3d 452, 458 (D.C. Cir. 2002) (holding that a court-endorsed settlement between a nuclear facility workers' union and the DOE did not meaningfully alter the legal relationship of the parties because "[i]ts only effect was to dismiss the union's lawsuit with a court order when no court order was needed" and because after dismissal "there was nothing left for the district court to oversee"); *New England Reg'l Council of Carpenters v. Kinton*, 284 F.3d 9, 30 (1st Cir. 2002) (holding that the plaintiff was not a prevailing party because "the district court entered no explicit order compelling, or even leading to, [the defendant's] adoption of the regulations" sought by plaintiff); *Smyth v. Rivero*, 282 F.3d 268, 285 (4th Cir. 2002) (holding that district court's order of dismissal was insufficient to confer prevailing party status because it neither stated that the court retained jurisdiction to enforce the parties' agreement nor embodied in court order the settlement terms agreed to by the parties); *N.Y. State Fed'n of Taxi Drivers, Inc. v. Westchester County Taxi & Limousine Comm'n*, 272 F.3d 154, 158-59 (2d Cir. 2001) (per curiam) (reversing grant of fees where the parties entered a private settlement and the district court simply entered an order dismissing the case as moot); *Luis R. v. Joliet Township High Sch. Dist.*, No. 01 C 4798, 2002 WL 54544, at *3 (N.D. Ill. Jan. 15, 2002) (holding that parties' agreement was a private settlement lacking judicial sanction because, although a hearing officer read the agreement into the record after mediation, "[p]laintiffs fail[ed] to offer any evidence that the hearing officer approved or sanctioned the parties' agreement").³

---

³*Dorfsman v. Law Sch. Admission Council, Inc.*, No. Civ.A. 00-0306, 2001 WL 1754726, at *5 (E.D. Pa. Nov. 28, 2001) (holding that, despite court's approval of the parties' stipulation, which afforded plaintiff all of her desired accommodations, plaintiff was not a prevailing party because "the parties reached the terms and conditions of the Stipulation without any intervention from this Court" and "the Court in no way imposed or dictated the substantive provisions of the Stipulation at issue"); *J.S. & M.S. v. Ramapo Cent. Sch. Dist.*, 165 F. Supp. 2d 570 (S.D.N.Y. 2001) (where the parties' agreement was neither "read into the record in front of the hearing

8

Indeed, in most of the post-*Buckhannon* cases in which courts have found settling plaintiffs to be prevailing parties in the absence of a consent decree, the district courts had given "judicial sanction" in some capacity, most commonly by the incorporation of the parties' agreement into a court order and/or the retention of jurisdiction to enforce its terms. For example, in *Johnny's Icehouse, Inc. v. Amateur Hockey Association of Illinois*, No. 00 C 7363, 2001 WL 893840, at *3 (N.D. Ill. Aug. 7, 2001), the plaintiffs sought a temporary restraining order preventing the defendant hockey association from proceeding with disciplinary actions against the plaintiffs. After the court granted the order, the defendant association agreed to dismiss the disciplinary actions altogether. The court memorialized the parties' agreement in an order. The court then held that the plaintiff was a prevailing party because "the Order formalizing and memorializing [defendant's] commitment legally altered the relationship between the parties." *Id.* This was so because the order "subjected what would otherwise have been merely a private agreement to judicial oversight and enforcement" and because the order "clearly bears the mark of judicial sanction." *Id.*; *see also Truesdell v. Philadelphia Hous. Auth.*, 290 F.3d 159, 165 (3d Cir. 2002) (plaintiff was a prevailing party because the order in question contained mandatory language requiring the defendant to make certain modifications, was entitled "Order," and the order gave the parties the right to request that the court enforce the settlement agreement); *Am. Disability Ass'n, Inc. v. Chmielarz*, 289 F.3d 1315, 1319 (11th Cir. 2002) (settlement is sufficiently judicially sanctioned if court order either incorporates terms of

---

officer" of the mediation, nor affirmed by the hearing officer, the parties "entered into a private settlement agreement"); *see also Chambers v. Ohio Dep't of Human Servs.*, 273 F.3d 690, 691 (6th Cir. 2002) ("[T]o 'prevail,' the party must have obtained a change in the legal relationship of the parties that originated in a court order or that had at least received judicial sanction.").

9

settlement or expressly retains jurisdiction to enforce its terms); *Nat'l Coalition for Students with Disabilities v. Bush*, 173 F. Supp. 2d 1272, 1279 (N.D. Fla. 2001) ("The parties' voluntary Settlement Agreement and resulting order and judgment [retaining jurisdiction and] requiring compliance with that Agreement have the same effect, for purposes of establishing prevailing party status, as would a litigated order imposing the same terms.")

A few courts, however, have held that a private settlement confers prevailing party status on the plaintiff, even absent a court's approval or retention of jurisdiction to enforce the settlement. In *Barrios v. California Interscholastic Federation*, for example, the Ninth Circuit noted that the parties' private settlement agreement, without more, was a "legally enforceable instrument" and that the parties agreed that "the district court would retain jurisdiction over the issue of attorneys' fees, thus providing sufficient judicial oversight to justify an award of attorneys' fees and costs."[4] 277 F.3d 1128, 1134 n.5 (9th Cir. 2002). The court observed that the plaintiff could enforce the terms of the settlement agreement (presumably in a state-court breach-of-contract action); therefore, the parties' legal relationship was therefore materially altered. *Id.* at 1134. Acknowledging the contrary language in the *Buckhannon* footnote regarding private settlements, the court stated: "While dictum in *Buckhannon* suggests that a plaintiff 'prevails' only when he or she receives a favorable judgment on the merits or enters in a court-supervised consent decree, we are not bound by that dictum . . . ." *Id.* at 1134 n.5. Similarly, in *Johnson v. District of Columbia*, the district court concluded that private settlement agreements alter the legal relationship of the parties because a breach of contract claim arises out of failure to comply.

---

[4]*Richard S. v. Dep't Developmental Servs.*, 317 F. 3d 1080 (9th Cir. 2003), which the plaintiffs submitted as supplemental authority, follows the reasoning and holding in *Barrios*, and thus does not require separate discussion.

10

190 F. Supp. 2d 34, 45 (D.D.C. 2002) (agreeing with *Barrios* and concluding that "without a holding from the Supreme Court or the D.C. Circuit to the contrary, this Court will not reject prior D.C. Circuit precedent that allows for the award of attorney's fees to plaintiffs who enter into private settlement agreements"); *but see, e.g., John T.*, 318 F.3d at 560 (Third Circuit declining to follow Ninth Circuit's narrow reading of *Buckhannon*).

This court is of the view that the courts that have required, at a minimum, a court order incorporating the settlement and/or retaining jurisdiction to enforce the settlement before a plaintiff can be deemed a prevailing party are correctly applying *Buckhannon*. Indeed, the Seventh Circuit's discussion of *Buckhannon* in *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662 (7th Cir. 2001) and *Federation of Advertising Industry Representatives, Inc.*, 2003 WL 1948858, strongly suggests that it will agree. In *Crabill*, the Seventh Circuit observed: "The significance of the *Buckhannon* decision for our case lies . . . in its insistence that a plaintiff must obtain formal judicial relief, and not merely 'success,' in order to be deemed a prevailing or successful party under any attorneys' fee provision comparable to the civil rights attorneys' fee statute." *Crabill*, 259 F.3d at 667. The Seventh Circuit later explained that a party needs to obtain "an enforceable judgment on the merits, a court-ordered consent decree, or [something] else that may be classified as 'some relief by the court'" to qualify as a prevailing party after *Buckhannon*. *Fed'n Adver. Indus. Representatives, Inc.*, 2003 WL 1948858, at *5. This court cannot conclude that a private settlement agreement, without more, sufficiently alters the parties' legal relationship to satisfy *Buckhannon*. Rather, there must be more to constitute a *court-ordered* change in the parties' legal relationship. *Buckhannon*, 532 U.S. at 604.

Plaintiffs argue otherwise. Citing *Maher v. Gagne*, 448 U.S. 122 (1980), and its progeny,

11

plaintiffs contend that the Supreme Court has held, and will continue to hold, that the required "material alteration of the legal relationship between the parties occurs [when] the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." *Farrar v. Hobby*, 506 U.S. 103, 113 (1992). The Supreme Court's footnote in *Buckhannon* counsels otherwise:

> We have subsequently characterized the *Maher* opinion as also allowing for an award of attorney's fees for private settlements. But this dicta ignores that *Maher* only "held that fees *may* be assessed . . . after a case has been settled by the entry of a consent decree." Private settlements do not entail the judicial approval and oversight involved in consent decrees. And federal jurisdiction to enforce a private contractual settlement will often be lacking unless the terms of the agreement are incorporated into the order of dismissal.

532 U.S. at 604 n.7 (citations omitted). Plaintiffs are correct to point out that this footnote is not the holding of *Buckhannon*. But neither is it, as plaintiffs argue, merely "some cryptic skepticism concerning private settlement agreements." (Pls.' Mem. Supp. Mot. Leave Submit Additional Authority Supp. Mot. Award Att'y Fees ("Pls.' Fourth Supp.") at 7.) To agree with plaintiffs in this case, the court would have to explicitly disagree with footnote 7, declare it to be dicta, and refuse to apply it, all the while disavowing the reasoning of most of the case law on the subject. The court declines to do so.

In this case, the court has not approved or sanctioned the parties' agreement. *See Luis R.*, 2002 WL 54544, at *3. Perhaps more significantly, neither party ever asked the court to approve or sanction the agreement. *See id.* Furthermore, the court has not ordered, and the settlement agreement does not request, the retention of jurisdiction over this matter to enforce the terms of

12

the agreement.[5] The court declared only that it would decide the issue of attorney's fees once the parties formalized their settlement agreement. Once the court has dealt with that issue, the settlement agreement provides that the parties will enter into a stipulation of dismissal. This is not judicial sanction, such that the plaintiffs have obtained "formal judicial relief." *Crabill*, 259 F.3d at 667. This settlement does not involve a judicially sanctioned change in the parties' legal relationship.

Plaintiffs argue that this court has provided its stamp of approval to the parties' settlement agreement. On September 28, 2000, the parties jointly submitted, and the court signed, a "Proposed Order," which struck the dates set for a final pretrial conference and trial and stated: "The parties shall finalize a formal written settlement agreement by October 13, 2000 formalizing the agreement in principle reached between the parties on September 22, 2000." (Proposed Order of 9/29/00, ¶ d.) Plaintiffs argue that the court in effect "adopted and incorporated the settlement agreement by ordering the parties to finalize a written agreement." ("Pls.' Fourth Supp." at 4.) But nothing in the court's September 2000 order includes any language compelling GE to do anything, sanctioning the parties' (then non-existent) settlement agreement, or retaining jurisdiction to enforce the agreement. The order merely ordered the parties to formalize their settlement—nothing more. This is not a sufficient judicial *imprimatur* to constitute a court-ordered change in the parties' legal relationship. *Cf. New England Reg'l Council of Carpenters*, 284 F.3d at 30 (1st Cir.) (no prevailing party status where the court did

---

[5] In a response brief to GE's arguments based on *Buckhannon*, plaintiffs inform the court that it may *now* ratify the settlement agreement and/or retain jurisdiction to enforce its terms. Because it is quite clear that such an action would materially alter the parties' agreement without GE's consent, the court cannot do so, although it recognizes that the *Buckhannon* decision may have had the same impact on the plaintiffs' expectations.

not compel defendant to adopt new regulations). Furthermore, contrary to plaintiffs' assertion, this court's retention of jurisdiction for the purpose of deciding the fee request does nothing to render plaintiffs prevailing parties. *OCAW*, 288 F.3d at 458 (holding that plaintiff union was not a prevailing party despite settlement agreement because, "[a]side from the union's attorney fee request, there was nothing left for the district court to oversee."); *but see Barrios*, 277 F. 3d at 1134 n.5 (retention of jurisdiction over attorney's fee issue constituted judicial oversight sufficient to justify fee award).

Plaintiffs also argue that the settlement agreement itself provides that GE will pay fees and costs. GE correctly points out that it does not. In fact, the agreement explicitly provides that GE retained the right to argue that plaintiffs are not prevailing parties. Plaintiffs next argue that the settlement agreement requires that state law be applied and frame an argument based on Illinois's definition of "prevailing party." Plaintiffs' analysis here is misinformed. The settlement agreement excluded the issue of attorney's fees, leaving it for later resolution by the court, so the choice of law provision can hardly be interpreted as encompassing that issue. Even if it did, the settlement agreement expressly provides that plaintiffs "will seek all fees and costs to which they are entitled under the applicable law," which is clearly 42 U.S.C. § 2000e-5(k), not state law. (Settlement Agreement, App. Supp. Pls.' Mot. Att'y Fees Costs Interest, Tab 1, ¶ 6(v).) Plaintiffs raised no state-law claims.

Plaintiffs further argue that GE has waived its "prevailing party" objection because GE waited to raise the objection until the *Buckhannon* decision was issued although Fourth Circuit case law supporting its present position existed at the time of the fee petition, before *Buckhannon* was decided. *See S-1 & S-2 v. State Bd. of Educ. of North Carolina*, 21 F.3d 49 (4th Cir. 1994)

(en banc) (per curiam). As GE correctly points out, however, controlling Seventh Circuit precedent at the time did *not* support GE's current position, *Bd. of Educ. of Oak Park v. Nathan R.*, 199 F.3d 377 (7th Cir. 2000), and GE had no obligation to anticipate the intervening *Buckhannon* decision changing the law, *cf. Phillips v. Cameron Tool Corp.*, 950 F.2d 488, 491 (7th Cir. 1991) (holding that a party need not "be clairvoyant; parties need not state numerous objections to settled law in hopes that something may change while an appeal is pending"). The court must apply *Buckhannon* and deny plaintiffs' motion for an award of attorney's fees, as they are not prevailing parties.

### III. Motion for Sanctions

Plaintiffs also seek attorney's fees and/or other sanctions resulting from GE's conduct during the discovery process in this case. Plaintiffs allege that GE destroyed relevant invoice logs containing statistics on call assignments among its technicians. This court granted plaintiffs' March 1998 motion for sanctions but withheld a remedy until after trial. Now that the parties have settled, the resolution of that motion is required.

Plaintiffs seek attorney's fees under Federal Rule of Civil Procedure 37(a)(4)(A), which provides that if a motion to compel disclosure or discovery is granted, the court shall award the moving party the reasonable expenses, including attorney's fees, incurred in bringing the motion. "The great operative principle of Rule 37(a)(4) is that the loser pays." *Rickels v. City of South Bend*, 33 F.3d 785, 786 (7th Cir. 1994) (quotation marks omitted). The non-movant may avoid such an award if the court finds that the movant failed to make a good faith effort to obtain the information without court action, or if the non-movant shows that its position was substantially justified or that an award of expenses would otherwise be unjust. Fed. R. Civ. P. 37(a)(4)(A).

In this case, however, the court did not explicitly grant a motion to compel by plaintiffs. Plaintiffs filed a motion to compel in April 1997 and a previous motion for sanctions in June 1997, both of which involved the same conduct upon which the present motion for sanctions is based. Specifically, plaintiffs sought invoice logs from GE containing data on service technician call assignments and performance. After these motions were filed, GE responded that the relevant information was available in microfiche form. Once plaintiffs obtained the information (or so they thought), they withdrew their motions to compel and for sanctions.

But Rule 37(d) also allows for an award of expenses where a party fails to provide a complete and accurate response to a request for production, unless the party's failure was substantially justified or an award would be unjust. On March 12, 1999, this court found that GE failed to produce relevant information after repeated discovery requests from plaintiffs. Furthermore, "a federal court has the inherent power to sanction for conduct which abuses the judicial process." *Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993). "This power is 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id.* (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)). Whether pursuant to the Federal Rules or its inherent power, this court has the authority to award attorney's fees and other expenses caused by GE's discovery violations.

On plaintiffs' March 1998 motion for sanctions, this court found that "call assignment information from compressor-related service calls for south zone technicians may be available and was ordered to be produced by March 20, 1998. As of the date of plaintiffs' motion, March 27, 1998, it had not yet been produced." (Interim Order Pls.' Mot. Disc. Sanctions ¶ 8.) The

court did not find that GE destroyed evidence, as plaintiffs argue, but found GE's discovery conduct to be dilatory and reckless. On March 24, 1999,[6] the court granted plaintiffs' motion for discovery sanctions. The court deferred determining what, if any, prejudice GE's conduct caused plaintiffs until trial when the actual prejudice could be assessed, and deferred awarding fees until after trial. Because the parties ultimately settled before trial, it is necessary to determine the appropriate sanctions in the form of attorney's fees. It was apparent in March 1999, as it is now, that plaintiffs "are entitled to some attorney's fees based on the difficulty of getting this [discovery issue] clarified." (Tr. of 3/24/99, at 23:19–20.) Whether or not GE actually destroyed or intentionally withheld relevant materials, the parties' many court appearances and filings on this issue could have been avoided had GE been more forthcoming with information, as it was required to be. It is clear that plaintiffs made an independent attempt to obtain information regarding call assignments before filing their motion. Furthermore, GE's failure to produce relevant call assignment information was not substantially justified, and an award of expenses would not be unjust. Plaintiffs are therefore entitled to those attorney's fees and expenses incurred as a result of GE's discovery failures.

However, plaintiffs' fee motion sought fees and expenses for their *entire* litigation efforts, on the theory that they are prevailing parties. Thus, their motion failed to specify those fees and expenses relating to their discovery problems. On this record, it is not possible to determine the appropriate amount of fees and expenses. The parties are requested to provide further briefing on this issue, as specified below.

---

[6]Although the minute order was not issued until April 1, 1999, the court's ruling was announced at the hearing held on March 24, 1999 and the minute order stated that the order was *nunc pro tunc*.

17

## Conclusion

For the foregoing reasons, plaintiffs' motion for attorneys' fees, costs, and in

pursuant to Title VII is denied. As to the motion for sanctions, plaintiffs are request

within 30 days of this order, a brief accompanied by a billing statement that shows t

expenses that plaintiffs incurred as a result of the discovery motions. GE is granted

a response brief within 20 days thereafter, after which plaintiffs have 14 days to file

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: June 10, 2003

18